# Tedder *v.* Steele.

*Bill in Equity to enforce Vendor's Lien on Land.*

1. *Liability of surety on note for purchase-money, and disclaimer by him.*—A surety on the note given for the purchase-money of land, though not a necessary party to a bill to enforce the vendor's lien, is a proper party, being interested in the account to be taken; and when made a party defendant, he can not avoid a personal decree for any balance of the debt remaining due after the land has been sold, as authorized by the statute (Code, § 3908), by entering a disclaimer.

2. *Defect in title, or fraudulent representation by vendor.*—If there was any defect in the vendor's title to the land, and he made any fraudulent representation as to his title, or gave a warranty of title, the purchaser may, at his election, either rescind the contract, or, the vendor being insolvent, may retain the possession, and recoup his damages for the defect of title; but, when the defect of title was known to the purchaser, and he accepted a quit-claim deed, he can not set up such defect in defense of a suit to enforce the vendor's lien.

3. *Vendor's lien; taking note for purchase-money, with surety, and reciting consideration.*—The principle is settled by the former decisions of this court, and has become a rule of property, that taking the purchaser's note, with surety, for the purchase-money, is presumptively a waiver or abandonment of the vendor's lien on the land; but, when the note recites the purchase as its consideration, and describes the lands, though such recital does not create an express charge on the land in the nature of an equitable mortgage (as held in *Bryant v. Stephens*, 58 Ala. 636), it rebuts and overcomes the presumed waiver and abandonment of the lien. (BRICKELL, C. J., dissenting, and adhering to *Bryant v. Stephens, supra*.)

APPEAL from the Chancery Court of Blount.
Heard before the Hon. H. C. SPEAKE.
The original bill in this case was filed on the 6th March, 1876,

[Tedder v. Steele.]

by John L. Steele, against James Tedder and James T. Beatty; and sought to enforce a vendor's lien on land, for the unpaid purchase-money. The contract of sale was made on the 16th January, 1873, by said John L. Steele, as the agent and attorney in fact of Benjamin F. Steele, acting under a written power of attorney; and said Benjamin being indebted to said John L., the purchase-money of the lands was, by agreement and understanding between them, to go in payment of that indebtedness. The agreed price of the land was $200, for which sum the defendants executed their two joint and several promissory notes, each for $100, payable on the 25th December next after date, to John L. Steele or bearer; and each recited that it was given "for value received, being for the purchase of the south-west quarter of the south-east quarter of section twenty-three (23), township twelve (12), range three (3), west, lying in the county of Blount." The notes were made exhibits to the bill, and one of them showed a credit of $70 indorsed on it. The original bill alleged that the complainant "sold, conveyed, and delivered said lands to the defendants;" but, Tedder having filed a disclaimer of all interest in the land, alleging that he signed the notes only as the surety for Beatty, and the latter claiming in his answer to be the sole purchaser, an amended bill was filed, alleging that the complainant, as the agent and attorney of said Benjamin F. Steele, "made and executed to said Beatty a deed of conveyance to said lands." The deed is nowhere set out in the transcript. Beatty filed a demurrer to the bill, for want of equity, and "because said bill fails to allege that complainant was seized or possessed of said lands, or any part thereof, or that he had, held or owned any right, title, or interest therein, at or before the sale thereof;" and the demurrer having been overruled by the chancellor, he filed an answer, alleging that there was no express agreement that a vendor's lien on the land should be retained, and insisting that any implied lien was waived by taking notes with surety for the purchase-money. He alleged, also, that the complainant falsely represented, during the negotiations for the sale, that Benjamin F. Steele had a perfect title to the land, when in fact he never had any title, the legal title being in the heirs of one Bradford; that respondent relied upon these representations, and did not discover their falsity until after he had made a partial payment on one of the notes, and had erected valuable improvements on the lands; that Benjamin F. Steele was a non-resident, and had no property in Alabama; and therefore he prayed that, as to these matters, his answer might be taken and held as a cross-bill, that an account be taken of the damages which he had sustained by reason of these false representations, and for appropriate relief. The complainant answered the cross-bill, ad-

[Tedder v. Steele.]

mitting that he had represented the title to be good, but alleging that the defendants knew it was defective, and knew more about it than he did, and did not rely on his representations, and had never been disturbed in the possession of the lands; and he alleged, also, that a description of the lands was inserted in the notes for the purpose of showing that a vendor's lien was retained.

On final hearing, on pleadings and proof, the chancellor held the complainant entitled to relief, as prayed in his bill, and ordered a sale of the lands by the register to pay the amount due on the notes. From this decree both of the defendants appeal. There is no assignment of errors on the transcript.

HAMILL & DICKINSON, for appellants, cited Daniell's Ch. Pl. & Pr., vol. 1, p. 710; *Foster v. Trustees of Atheneum*, 3 Ala. 302; *Hightower v. Rigsby*, 56 Ala. 126; *Bankhead v. Owen*, 60 Ala. 457.

SOMERVILLE, J.—This is a bill for the enforcement of a vendor's lien, filed by the appellee, Steele, against the appellants, Tedder and Beatty, who were defendants in the lower court.

The disclaimer of Tedder, by which he sought to repudiate all interest in the suit, did not entitle him to a discharge. Conceding that he was a mere surety to the note executed by himself and Beatty for the purchase-money of the land, and that he was not interested as a purchaser, he was, nevertheless, a proper, though not a necessary party defendant to the suit. He was a joint maker of the note, equally bound with the principal for its payment, and was interested in the account required to be taken by the court in order to ascertain the amount of the mortgage debt, and to determine the balance due after allowance of a credit on the debt of the amount for which the land may be sold, as is required to be done by the statute.—Code, 1876, § 3908; *Bristol v. Morgan*, 3 Edw. Ch. Rep. 142; *Rushmore v. Miller*, 4 *Ib.* 84. It may be conceded that, apart from the power conferred by special statutory provisions, suits for the foreclosure of mortgages, and for the enforcement of vendors' liens, are not intended to act *in personam*, so as to authorize courts of equity to render personal decrees against defendants, for any deficiency found due by a given day.—*Dunkley v. Van Buren*, 3 John. Ch. Rep. 330. For the recovery of such balance, the complainant would be remitted to his remedy at law. The statute was, however, enacted to obviate this difficulty, and to prevent both delay and a multiplicity of suits. It provides that, in all such cases, "when an account is taken between the parties, and the amount of indebtedness between them ascertained by the decree of such

[Tedder v. Steele.]

Chancery Court, such decrees shall have the force and effect of judgments, and execution thereon may be issued by the register, against the goods, chattels, lands and tenements, of the parties against whom such decrees may have been rendered; but no execution must issue on decrees for the foreclosure of mortgages, or the enforcement of equitable liens, until the property ordered to sale shall have been sold, and the sale confirmed, and the balance due ascertained by the decree of such court, when execution must issue for the balance which may be found due."—Code, 1876, § 3908.

. This statute is broad enough, we think, to include within its terms sureties who have been made parties defendant in such suits. The debt would be due by them, just as much as by their principal, and the accounting must be between the complainant and all the defendants who are liable for the debt. Under such circumstances, the reasons for authorizing a personal decree for the ascertained balance apply with just as much force to the surety, as they do to the principal debtor. Such construction of the statute under consideration not only establishes the more convenient practice, but also better comports with the spirit of the maxim, that when the jurisdiction of a court of equity once attaches, it will be retained for the purpose of granting full relief, and meting out complete justice as between all the parties litigant.

The grounds of demurrer interposed to the bill were not well taken, and were properly overruled by the chancellor.

If there was any defect in complainant's title to the land, at the time he made the sale, and any fraudulent representation was made to the vendee that such title was good, or a warranty was given, this did not appear on the face of the bill, and was mere matter of defense, constituting ground for relief by cross-bill, on averment of the requisite facts. The insolvency of the vendor being alleged and proved, the defendant might, in view of such fraud or warranty, elect either to rescind the sale, or retain possession and recoup his damages for the defect of title. *Thweatt v. McLeod*, 56 Ala. 375; *Flinn v. Barber*, 64 Ala. 193; *Nelson v. Wood*, 62 Ala. 175; *Strong v. Waddell*, 56 Ala. 471; *Wyatt v. Garlington, Ib.* 576; *Munford v. Pearce*, at the present term.

The evidence fails to establish satisfactorily any fraudulent representations as to title by Steele, the defects of his title being known to Tedder at the time of his negotiating the purchase, whether for Beatty or himself, it does not matter. Nor are we satisfied that the deed of conveyance executed by Steele to Beatty, conveying to him the land in controversy, was a warranty deed. It purports to be an exhibit to the deposition of one of the witnesses; but, by mistake, or otherwise, seems

VOL. LXX.

[Tedder v. Steele.]

to have been omitted from the record. The witness, Martin, who drafted the instrument, testifies that it was a mere *quit-claim*, and not a warranty deed. In the absence of the deed itself, which was shown presumptively to have been in the possession, and under the control of Beatty, we are disposed to take as true the statement of Martin, that there was a refusal to warrant the title of the land, which was at the time of the sale known to both Beatty and Tedder to be doubtful, and that, for this reason, a quit-claim deed was executed. If this were not so, it was very easy for Beatty to disprove it by the production of the instrument itself, which was the best evidence of its own contents.

It is urged that, the deed being made to Beatty, he was the real purchaser of the land conveyed by it, and inasmuch as Tedder is shown to have no interest in the purchase, that he signed the note given for the purchase-money as a mere surety. It is contended that the acceptance of such personal security by Steele would be presumptively a waiver, or abandonment, of the vendor's lien by him. This doctrine is certainly well settled by the past decisions of this court, and may be considered as a rule of property, never departed from since the case of *Foster v. The Trustees of the Athenæum*, 3 Ala. 302, and has been recently affirmed many times by this court.— *Walker v. Carroll*, 65 Ala. 61; *Walker v. Struve*, at present term; *Donegan v. Hentz*, at present term; 2 Story's Eq. Jur. § 1226.

The whole question of waiver is conceded to be purely one of fact, or intention, and the burden of proof is always on the purchaser to establish, in the particular case, that the lien has been intentionally displaced, or waived, by consent of the parties, express or implied. If it remain in doubt, then the lien must be held to attach.—2 Story's Eq. Jur. § 1224; 1 Perry on Trusts, § 236.

One very important consideration in this case, throwing light upon the intention of the parties, is found in the fact that *the lands sold are described in the notes given for the purchase-money*. In *Bryant v. Stephens*, 58 Ala. 636, it was held, that such a recital created conclusively, by contract, a charge on the land for the purchase-money, in the nature of an equitable mortgage. We are not willing to follow the doctrine of this case, to this extent, but feel inclined to subject it to modification. The sounder and true principle, in such cases, perhaps, is, that where the lands are described in the note, it must be taken as a very strong implication of an intention to retain the vendor's lien, though falling short of such an express contract to charge the lands, as would constitute an equitable mortgage. In other words, it is a cogent fact, indicating an intention not to waive or abandon the vendor's lien, but to retain it. And we hold

[Scott v. Simons.]

that the presumption is so strong, as to overcome and rebut the weaker presumption of waiver arising from the taking of personal security on the note for the purchase-money. The taking of collateral or personal security is deemed, at most, as no more than a presumption of an intentional waiver of the lien, and not as conclusive. The theory is, that it indicates an intention to rest on such security, and to discharge the land. But, when the land is described in the note, this recital of the consideration must be regarded as evincing, at least impliedly, a strong intention of the parties that the vendor's lien shall be retained, and that the vendor does not rest upon the personal or collateral security taken, but upon the land itself. While I, in common with my associates, entertain grave doubts even of this modified view of the principle declared in *Bryant v. Stephens*, we feel satisfied that the doctrine of that case should be overruled as unsound, to the extent above announced. It has been so short a time since its promulgation, that but little room is left for invoking the doctrine of *stare decisis*.

There is no error in the decree of the chancellor overruling the demurrer to the bill, and granting the relief prayed for against the defendants, and his decree must be affirmed.

BRICKELL, C. J., disssuted, adhering to *Bryant v. Stephens*, *supra*.