# Gravlee *v.* Lamkin.

*Bill in Equity to enforce an Express Trust in Lands.*

1. *Equity pleading; parties to bill to enforce charge on lands.*—Where in a conveyance of lands an express trust is created thereon for the payment of money to a third person. and the vendee conveys to a sub-purchaser who assumes the performance of the trust, neither the heirs of the original vendor, nor his vendee, nor a subsequent incumbrancer, nor a surety for the payment of the money to the beneficiary in the trust, are necessary parties to a bill filed by the *cestui que trust* to enforce the payment of the money out of such lands.

2. *Vendor's lien; not waived by purchaser's note containing waiver of exemptions and signed by his wife as surety.*—A vendor's lien is not waived by the fact that the purchaser's note given for the purchase money contains a waiver of exemptions, nor by the

[Gravlee v. Lamkin.]

fact that the purchaser's wife signed it as surety; she being pro-
hibited by the statute (Code of 1886, § 2349; Code of 1896, § 2529)
from becoming the surety of her husband, and therefore, no
distinct, independent security being given either by the waiver
or by the wife's signature.

3. *Trusts and trustees; how trust in land created.*—No particular form-
ality is required in order to create an express trust in land, and
all that is necessary is that there should be a writing whereby a
person having the power of disposal agrees or contracts that
the land disposed of shall be held or dealt with in a particular
manner for the use and benefit of another.

4. *Same; when express trust created; case at bar.*—Where the pecuniary
considerations of the conveyance of lands, as declared in a con-
temporaneous instrument executed by the vendee, are the an-
nual payment to the grantor of the sum of two hundred dollars,
during his life, and the payment after his death to his daughter
of the sum of twelve hundred dollars in two equal annual instal-
ments, the second bearing interest for the term of one year, an
express trust is impressed upon the lands for the use and benefit
of the daughter, and said lands are charged with the payment
to her of the specific sum of money at the times appointed.

5. *Same; express trust upon land for the payment of money not extin-
guished by acceptance of independent security for payment.*—An
express trust created upon land for the payment of money can
not be extinguished otherwise than by the payment of the spe-
cific sum or sums, or by the release or the agreement of the
*cestui que trust*; and the mere acceptance by the *cestui que trust*
of independent security for the payment of money, in the ab-
sence of a release or an agreement, express or implied, does not
operate an extinguishment of such trust.

6. *Receipts; character thereof; when parol evidence admissible to vary
or contradict.*—A receipt may be of a twofold character, in that
it may not only be the acknowledgment or admission of the re-
ceipt of money or other thing in payment or satisfaction of a
debt, but it may contain a distinct and independent contract;
and so far as the receipt imports a contract, it is not open to
parol evidence to vary or contradict its terms, but so far as it is
a receipt of money or other thing it may be varied or contra-
dicted by such evidence.

7. *Same; receipt for note in payment of debt; admissibility of parol evi-
dence to explain its terms.*—A receipt given for a note which re-
cites that the note was taken "in full payment of amount due"
can be explained or contradicted by parol evidence; the words
"in full payment" as used in such receipt not being contractual,
and, therefore, capable of variation by parol evidence.

[Gravlee v. Lamkin.]

APPEAL from the Chancery Court of Walker.

Tried before the Hon. THOMAS COBBS.

On 3d day of April, 1895, Mrs. N. M. Lamkin, the appellee, filed the bill of complaint in this cause against the appellant, Harvey J. Gravlee, to declare and enforce a trust lien or equitable charge on the lands described in the bill for the sum of $648, evidenced by a promissory waive note or bond executed by defendant and his wife, N. N. Gravlee, to complainant, on the 6th day of April, 1893, due 3d day of February, 1894. The grounds on which the alleged trust lien or equitable charge is based, as averred in the bill, are that on November 28, 1883, William Gravlee, who was the father of the defendant and complainant, and also of G. W. Gravlee and D. H. Gravlee, being old and in failing health, conveyed the lands in controversy to G. W. Gravlee; that, in consideration of said conveyance, G. W. Gravlee, on 29th of November, 1883, executed a written agreement in which, among other things, he agreed to pay complainant $1,200, to-wit: $600 one year after death of said William Gravlee, and $600 two years after his death, with interest for one year; that on the 22d of October, 1888, G. W. Gravlee conveyed the said lands to the defendant and D. H. Gravlee, charged with said trust, as expressed in the conveyance; that on July 6, 1890, D. H. Gravlee conveyed all his interest in said lands to defendant, and has no further interest therein; that on 3d of January, 1892, William Gravlee died; that said first $600 had been paid to complainant before bill filed; that the other $600 had not been paid, but that on 6th of April, 1893, defendant and his wife executed and delivered to complainant their joint and several promissory waive note or bond for said $600, and interest due thereon, under said former contracts of G. W. Gravlee and defendant and D. H. Gravlee. The note on bond (for it is under seal) is made an exhibit to the bill. It is in words and figures as follows: "Gravleeton, Alabama, April 6th, 1893. 3d day of February, 1894, after date, we promise to pay to the order of Nancy M. Lamkin six hundred and forty-eight dollars, value received, at Jasper, Alabama. The right to exemption is hereby waived as provided in constitution and laws of the State

of Alabama, or any other State in the United States.; and it is further agreed that the undersigned shall pay all cost of collecting, including a reasonable attorney's fee, if not paid at maturity. Given under our hands and seals, this 6th day of April, A. D., 1893. [Signed] H. J. Gravlee. (L. S.) N. N. Gravlee. (L. S.) Witness: T. P. Lamkin.'' In the bill said attorney's fees are claimed and sued for. It is further alleged in said bill that in taking said note complainant did not waive her lien on said lands, but expressly reserved the same. The prayer of the bill, after asking that H. J. Gravlee be made a party defendant by proper process, was as follows: ''That your honor will order a reference to the register to ascertain and report the amount due complainant under said trust, and on the coming in of the report that your honor will order and decree that, unless the amount so found to be due is. paid within the time prescribed by your honor, said lands be sold to satisfy your oritrix's demand.'' Then follows a prayer for general relief. On May 2, 1894, defendant answered the bill, admitting its averments, except that he denied that the second $600 had not been paid. He alleged that the said $648 note or bond was given in full payment of said obligation; that his wife, N. N. Gravlee, was his surety on said bond; that when it was made and delivered to complainant, it was distinctly understood and agreed by and between the parties thereto and said surety that it was taken in full payment and satisfaction of said $600, and that said lands were thereby released and discharged from any further incumbrance, lien, charge or trust for the payment of said $600. He also denied that complainant retained her lien on said lands when she took said bond, as alleged in her bill. Defendant, as a part of his answer, demurred to said bill upon substantially the following grounds: (1.) For want of proper parties, because it was shown by the bill and exhibits that G. W. Gravlee, in conveying said lands to appellant and D. H. Gravlee by deed (made an exhibit to the bill), had not only charged said .lands with said trust of $1,200 in favor of appellee, but also with another trust or charge in the hands of said grantee of $1,000 in favor of the wife of said G. W. Gravlee, C. M. Gravlee; and, therefore, C. M. Gravlee was shown to

[Gravlee v. Lamkin.]

have such an interest in the lands, the subject matter of controversy, that she was and is a necessary party, and ought to be made such, to enable her to come into court, and protect her intetests in the property. (2.) Because G. W. Gravlee, the first and principal obligor to appellee, who first promised to pay the $1,200 to appellee, and who is ultimately liable to her if the land should not bring enough to pay her, and who created the trust or charge on the land, was not made a party. (3.) All the heirs of William Gravlee, deceased, whose lands these were when charged with this trust, should be made parties. (4.) That N. N. Gravlee, the surety on said note, is a necessary party to the bill. (5.) For want of equity, in this : that the bill showed that appellee had taken said promissory waive note or bond with N. N. Gravlee as surety, and thereby waived her lien, trust, or charge on said lands. (6.) That said waive note or bond, with attorney's fees provided for therein and sued for, is in legal effect a novation of the original contract, and a waiver of the lien, trust or charge on the lands.

The complainant in her deposition testified as follows : "I am the complainant in this suit. I am the N. M. Lamkin that the note marked 'Exhibit D' to the bill is payable to. I first saw the note as soon as Mr. Lamkin came back from Mr. H. J. Gravlee's. I saw it in the spring, soon after it was taken. I was not present when the note was signed up. After the note was signed up, Mr. H. J. Gravlee came to get a receipt for it. This was in the summer after Mr. Lamkin brought me the note. I don't recollect the exact time. It was perhaps two or three months. Mr. Lamkin and myself and Mr. H. J. Gravlee were the only ones present when he came, is my recollection. H. J. Gravlee and Mr. Lamkin were conversing about the receipt when I came into the room. I inquired what it was that a receipt should be given, and Mr. Lamkin just said that Jack wanted it, and that he thought he would be better satisfied with it. Jack agreed that if we would give him a receipt for the note that he would insert the numbers of the land in the receipt when he reached the probate office, so that he could get the correct numbers of the land. The note was given for my part of the home place, for my interest in

the land there. N. N. Gravlee is H. J. Gravlee's wife. I knew she was his wife when I first saw the note. I don't remember that anything was said about my having a lien on the land at the time he came to get the receipt, except that he said that 'she had a lien on the lands.' I never relinquished my claims on said land by taking said note. I refused at all times to relinquish my claims in said lands, except for money. William Gravlee was my father's name. It was my interest in the land belonging to his estate that this note was given for. Jack Gravlee wrote out this receipt that I signed." On cross-examination she testified: "My recollection is that the blank was left in said receipt for Jack to insert the numbers in. Mr. Lamkin and I both signed the receipt."

T. P. Lamkin, the husband of complainant, testified in his deposition as follows: "I don't remember just how long after the note was made when he came to get the receipt. It was in the summer some time. He came to my house. He brought a receipt for us to sign. We did not sign the receipt that he brought, because the receipt that he brought released the lands entirely. I stated to Mr. Gravlee, at my house, why I would not sign the receipt he brought. I stated to him that I would not sign the receipt he brought because it released the lands. We did sign a receipt. The receipt was not complete when we signed it. There were blanks in it. The numbers of the land were to be included in the blanks of the receipt. That receipt we gave was to show that the note was given for her interest in the land, and the blank left in the receipt was to insert the numbers in when he got to the probate office. Nothing was said about my wife's releasing her claim or interest in said lands, except she refused to sign the first receipt, releasing said lands. My wife did not sign any receipt releasing said lands. After the numbers were not inserted in the receipt, Mr. Gravlee went to Mr. Appling's office, and I went to him later in the day to get him to insert the numbers, and he refused to do so."

The deposition of N. N. Gravlee, the wife of the defendant, was, in substance, that T. P. Lamkin, husband of complainant, went to defendant's house, and said he was in pressing circumstances, and wanted appellant to

give a note, with witness on it, as surety, so that he could use it as collateral security to obtain money to save his property from sale under mortgage; that nothing was said about the note being a lien on the land; that Lamkin wanted a mortgage, but, as appellant owed the other heirs, he would not give a mortgage.

The deposition of the defendant is to the same effect, in substance, as his wife's, with reference to what occurred in Mrs. Gravlee's hearing and presence. In addition, he says: "My wife and I executed that note with the understanding that it released other parties by my wife going on the note with me, and that he looked altogether to us through that note for the payment of that debt; because Lamkin said, if he had such a note, he could use it as collateral to raise money to pay mortgage debts that were then pressing him, and that the note was in payment of said $600." As to the execution of said receipt, the defendant testified it was written by him at the house of T. P. Lamkin, some four to six months from the time said note was given; that a blank was left in it for the numbers to be inserted by him at the probate office; that he did so insert said numbers the same day. He exhibits the receipt as part of his deposition, which is in words and figures as follows, viz.: "Received of H. J. Gravlee, one note bearing date April the 6th, 1893, made by him and N. N. Gravlee, for six hundred and forty-eight ($648) dollars, in full payment of amount due as heirs of the estate of William Gravlee, deceased, as far as the old home place is concerned, being the following lands, to-wit: Southwest quarter and southwest quarter of northwest quarter of section 35, southeast quarter and south half of northeast quarter, northwest quarter of northeast quarter section 34, township 13, range 5 west. Also the northeast quarter of southeast quarter of section 33, township 13, range 5 west, lands deeded by William Gravlee to G. W. Gravlee, and by G. W. Gravlee to H. J. and D. H. Gravlee. [Signed] T. P. Lamkin. N. M. Lamkin."

On the final submission of the cause on the pleadings and proof, the chancellor overruled the demurrers to the bill, and decreed that the complainant was entitled to the relief prayed for, and ordered accordingly. From this decree the defendant appeals, and assigns the rendition thereof as error.

[Gravlee v. Lamkin.]

APPLING & McGUIRE, for appellant.—The demurrers for non-joinder of parties should have been sustained.— 1 Pom. Eq. Jur. 114; 3 Brick. Dig. 368, sec. 1.

The claim of appellee is analogous to a vendor's lien and was waived, whether appellant's wife was bound or not.—*Jackson v. Stanley*, 87 Ala. 270; *Hammell v. Strickland*, 99 Ala. 616; *Walker v. Carroll*, 65 Ala. 61; *Foster v. Athaeneum*, 3 Ala. 302; *Kinney v. Esminger*, 94 Ala. 536.

The receipt was a contract and could not be modified, or contradicted by parol.—*Langdon v. Langdon*, 4 Gray, 188; 1 Greenleaf on Ev. 305; 1 Brick. Dig. 860 and 861, § 813; *Stevens v. Hertzler*, 114 Ala. 563; *Bush v. Bradford*, 15 Ala. 315; 3 Brick. Dig. 417, § 155; *Walker v. Struve*, 70 Ala. 167.

COLEMAN & BANKHEAD, *contra*.—The demurrers for non-joinder of parties were not well taken.—*Chapman v. Peebles*, 84 Ala. 286; *Boutwell v. Steiner*, Ib. 308; *Wilkinson v. May*, 69 Ala. 33; *Batre v. Auze*, 5 Ala. 173; *Haley v. Bennett*, 5 Port. 452; *Ramage v. Towles*, 85 Ala. 588; *Tedder v. Steele*, 70 Ala. 347. There was no extinguishment of the trust.—*Jackson v. Stanley*, 87 Ala. 270; *Lane v. Jones*, 79 Ala. 159; *Thompson v. Sheppard*, 85 Ala. 588; *Malone v. Keely*, 54 Ala. 532; *Noble v. Moses Rros.*, 81 Ala. 530; *Tedder v. Steele*, 70 Ala. 347.

BRICKELL, C. J.—The bill in which the appellee was complainant and the appellant respondent, was filed to enforce the payment of a promissory note made by the respondent and his wife, as a charge on lands particularly described. As to parties, the bill was properly constituted, and the demurrers upon this ground, were not well taken. The legal estate in the lands originally resided in William Gravlee, and were by him conveyed to G. W. Gravlee, who, by an instrument in writing cotemporaneously executed, declared the consideration of the conveyance, and the uses and trusts for which it was executed. Subsequently, he conveyed to the appellant and Daniel Gravlee, the grantees assuming to execute the trusts impressed on the lands; and thereafter Daniel conveyed to the appellant. Having parted with the legal estate absolutely, G. W. Gravlee was not a *necessary*

party to the bill.—*Batre v. Auze,* 5 Ala. 173 ; *Wilkinson v. May,* 69 Ala. 33 ; *Boutwell v. Steiner,* 84 Ala. 307. Though the conveyance he executed to Daniel H. Gravlee and the appellant stipulated, as part of its consideration, that they should pay his wife one thousand dollars, on the death of the original grantor, she was not a *necessary* party defendant. Her relation at best, was that of a subsequent incumbrancer—subordinate in right and equity to the pre-existing trust impressed on the lands in favor of the complainant. Such an incumbrancer may be a *proper,* but is not a *necessary* party to a bill to enforce the prior right of equity.—*Cullom v. Batre,* 2 Ala. 415 ; *Forrest v. Luddington,* 68 Ala. 1. Nor were the heirs of William Gravlee *necessary* or *proper* parties. The ancestor did not die seized of the lands, and by descent no estate or interest therein had devolved on them. If the relation of the wife of the appellant was, as insisted, that of a surety on the note, she may have been a *proper,* but was not a *necessary* party.—*Tedder v. Steele,* 70 Ala. 347 ; *Ramage v. Towles,* 85 Ala. 588.

The next question presented for consideration, grows out of the contention of the appellant, that by the acceptance of the note with his wife as surety, for the unpaid money owing her, the appellee waived or lost her equity to charge the lands. The foundation of the contention rests upon the supposed similarity or analogy of of thè equity of the appellee, to the implied or equitable lien of a vendor of lands for the payment of the purchase money, though he has made an absolute conveyance. Such lien is generally regarded as waived, if for the payment of the purchase money, the vendor takes a distinct, independent security, whether by way of mortgage, or pledge, or the personal responsibility of a third person. Here, if the supposed similarity or analogy existed, there was no taking such security. The note, as to the wife, was without legal validity or obligation, the statute inhibiting her, directly or indirectly, from becoming the surety of the husband.—Code of 1886, § 2349 ; Code of 1896, § 2529. The note was no more than a promissory note, of which the appellant was sole promissor, for the payment of money to the appellee, and the acceptance of such note, wherever the equitable lien of a vendor is

recognized, does not affect the lien.—1 Lead. Eq. Cases, 485. Nor would the waiver of exemptions, contained in the note, as is now insisted, convert it into a distinct, independent security. Considering this particular question, it was said by CLOPTON, J., in *Thompson v. Sheppard*, 85 Ala. 614: "A waiver of exemptions specified in a note creates no lien upon the property that would be otherwise exempt. The only effect is, to subject the exempt property to levy and sale under an execution on any judgment which may be rendered on the note, the same as other property of the debtor. Such note may enhance the personal security of the vendee, but can in no sense be regarded as a distinct and independent security. The taking such note manifests rather an intention to look to the personal security of the vendee only, and is not presumptive of the waiver of the vendor's lien."

But it is quite an error to suppose that the equity of the appellee bears any resemblance or analogy to the equitable lien of a vendor of lands who has made an absolute conveyance. It does not admit of question, that by the instrument in writing executed by G. W. Gravlee cotemporaneously with the conveyance of the lands to him by William Gravlee, trusts were declared, express trusts, of which he was trustee. There is no particular formality required in the creation of such trusts. When land is the subject, all that is necessary is a writing whereby a person, having the power of disposal, agrees or directs that it shall be held or dealt with in a particular manner for the use and benefit of another.—1 Perry on Trusts, § 82; *McCarthy v. McCarthy*, 74 Ala. 552. The pecuniary considerations of the conveyance by William Gravlee, as declared in the cotemporaneous instrument, were the annual payment during his life of the sum of two hundred dollars, and the payment at his death, to the appellee of the sum of twelve hundred dollars, in two equal annual instalments, the second bearing interest for the term of one year. The death of the grantor happening, the lands are to be divided among his other children, to the exclusion of the appellee. We have here then, every element and characteristic of an express trust, impressed on the lands for the use and benefit of the appellee—they are charged with the pay-

[Gravlee v. Lamkin.]

ment to her of a specific sum of money at times appointed. The trust cannot be extinguished otherwise than by the payment of the money, or by the release, or the agreement of the *cestui que trust*. The mere acceptance of security for payment, in the absence of a release or of an agreement, express or implied, would not operate an extinguishment of the trust, as the taking of such security will not operate a waiver or abandonment of a lien reserved by contract by the vendor of lands, or which he may carve out for himself by retaining the title.—2 Jones on Liens, § 1116. The insistence that by the taking of the note there was an intentional displacement, waiver, or extinguishment of the trust, finds no support in the evidence of the attendant circumstances when the note was taken. The first instalment of the twelve hundred dollars having been paid, and the day of payment of the remaining instalment not having arrived, the appellee and her husband, desiring some more tangible evidence of the liability of the appellant to make payment of it than was afforded by the several conveyances through which he derived title to the lands, proposed that he should execute a mortgage on the lands to secure its payment. This was declined, and the note was taken, because it could be more conveniently used in anticipated dealings or transactions with others. True, the appellant testifies that the note was executed "with the understanding that it released other parties by my wife going on the note with me, and that he looked altogether to us through that note for the payment of that debt. The understanding was based on the simple fact that he could use the note as collateral." This, to say the least, is rather equivocal in meaning, and may import that it was the conclusion or opinion of the appellant as to the effect of taking the note. It can not be accepted as proof that there was an agreement on the part of the husband of the appellee by whom the note was taken, that it should operate a release of the lands from the trust; an agreement he had not authority to make, and which would have been inconsistent with his request for a mortgage on the lands, the highest distinct and independent security for the satisfaction of the trust, which could have been given.

[Gravlee v. Lamkin.]

The remaining insistence of the appellant is, that the receipt given by the appellee and her husband several months after the taking of the note, expresses that the note was taken *in payment* of the liability of the appellant, operating a satisfaction or extinguishment of the trust. And the further insistence is, that in this respect, the receipt is not open to explanation, contradiction or modification by parol evidence.

Receipts whether for money paid, or for other matter or thing, are regarded as informal, non-dispositive writings, open to explanation, modification, or contradiction by parol evidence.—2 Whart. Ev., § 1064; 1 Green. Ev., § 305; 2 Parsons on Contracts, 555; 1 Brick. Dig. 860, §§ 809–10. Such a paper may be of a two-fold character—it may be not only an acknowledgment or admission of the receipt of money or other thing in payment or satisfaction of a debt, but it may contain a contract distinct and independent, or, as expressed by Mr. Greenleaf, "terms, conditions, and agreements or assignments." So far as it imports a contract, it is not open to parol evidence, but so far as it is a receipt, it may be varied or contradicted by such evidence. The evidence clearly manifests, that the note was not taken in satisfaction or extinguishment of the trust, nor as payment of the liability of the appellant, and that the receipt was intended only as an admission or acknowledgment of the existence of the note and of its acceptance by the appellee and her husband. What seems conclusive upon this point is, that at first the appellant presented a paper in form a receipt for the note, expressing a release of the lands, the execution of which was refused, and upon his continued solicitation for a receipt for the note, it was agreed by the appellee and her husband to sign a receipt, if in it was incorporated a description of the lands on which the lien was claimed; and upon this agreement, the paper containing such description, now produced, was executed. The contention of the appellant rests upon the use of the words *in payment*, which are supposed to be contractual and incapable of variation by parol evidence. They are not more contractual than they would be if employed in acknowledging the receipt of money. An illustration of frequent occurrence is, that of a vendor of lands, making an absolute

conveyance reciting, or by a separate instrument reciting, that the purchase money has been paid. Such recital or acknowledgment is open to explanation, contradiction or modification by parol evidence.—*Saunders v. Hendrix*, 5 Ala. 224. Another consideration, which may not be overlooked, is, that the lands are described in the receipt. If the note was a payment, a satisfaction of the trust or lien on the lands, why describe them in the receipt? Such description in a note given for the purchase money of lands, implies the intent to preserve a lien on the lands for its payment.—*Tedder v. Steele*, 70 Ala. 347; *Chapman v. Peebles*, 84 Ala. 283. Unless by force of the receipt, it is not insisted there has been satisfaction of the trust in the lands, and that effect we can not impute to it.

We find no error in the record, and the decree of the chancellor is affirmed.

Affirmed.